## NATHAN T. FITCH

*v.*

## FRANKLIN PRIEST.

1. CONTRACT—*construction of*—Where one party agrees with another to take all the grain the latter may receive at a certain ·place, upon rates of commission agreed between the parties, and agrees to supply and keep supplied the latter with money, with which to pay for said grain, without delay, expense or inconvenience to him, who shall in no case be required to advance the money himself—a proper construction of such contract would not require the other party to keep money in the hands of the latter at all times, but would be sufficient if he supplied the money as it was needed for the purchase of the grain; but such party would not be in default upon his contract, until he had been specially notified that money was needed, or that he had been requested to send it and had failed to do so.

56—46TH ILL.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. CHARLES EMERSON, Judge, presiding.

This was an action of assumpsit, brought by Fitch against Priest, to recover damages for a breach of contract, which is as follows, to-wit:

Memorandum of agreement made this twenty-sixth day of November, A. D. 1866, by and between Franklin Priest, of the city of Decatur and State of Illinois, of the one part, and Nathan T. Fitch, of the same place, of the other part, witnesseth, that the said Fitch agrees to buy, handle and ship grain at Forsyth Station, on the Illinois Central Railroad, for and on account of said Priest, at the rates and on the terms mentioned in the schedule hereto annexed, which said schedule is hereby declared and agreed to form part and parcel of this agreement. And the said Priest promises and agrees, in consideration of the promises and of the agreements on the part of said Fitch, to be observed and performed, to take all the grain received by said Fitch at said station, during the life of this contract, and to supply and keep supplied the said Fitch with money with which to pay for said grain, without any delay, expense or inconvenience to said Fitch, who shall in no case be required to advance any money himself in buying or paying for grain. Said Priest further agrees not to buy grain either directly or indirectly, at said station, and to furnish all gunnies (re-sowed) and twine that may be required in sacking corn, without unnecessary delay. And the said Fitch promises and agrees that he will buy grain for no other person, nor buy same on his own account during the life of this contract, but that he will use his best judgment, care and diligence in the interests of said Priest, and in no case is to pay or contract to pay for grain more than the market price in Decatur at the time of such payment or contract. It is understood and agreed that the scale weights of grain as bought and paid for shall be conclusive between both parties, and that in case of

shrinkage or shortage, said Priest is to bear the loss, and to have benefit of any overplus. This agreement to continue in force until the first day of June, A. D. 1867. And to the due and faithful performance of this agreement, each of said parties binds himself, his executors, administrators and assigns, unto the other, his executors administrators and assigns, in the sum of five thousand dollars, as fixed, settled and liquidated damages for any loss that may be sustained in consequence of the failure or neglect of the other party to perform and observe the agreements and stipulations or any or either of them, to be by him observed or performed. It is understood that if additional crib room should be required for storing corn, said Priest is to furnish the material, and said Fitch to build same, when the property in same shall be in each in proportion to their respective interests therein. Executed in duplicate, the day and year first above written

             (Signed)                      N. T. FITCH,
                                           F. PRIEST.

SCHEDULE, hereinbefore referred to and showing rates of commission to be paid by said Priest to said Fitch for services as agent same, to-wit: For buying, weighing, and loading directly into cars, five cents per bushel; for same service when corn has to first be delivered into crib, six cents per bushel; for buying, shelling and loading corn in bulk, seven cents; for buying, shelling, sacking and loading, eight cents per bushel.

             (Signed.)                    N. T. FITCH,
                                           F. PRIEST.

On the trial in the court below, the breach alleged was the failure to furnish the money as provided by the terms of the contract. The defendant demurred to the declaration, and the demurrer was sustained, whereupon the plaintiff brings the cause to this court, and assigns for error, the sustaining the demurrer and the judgment for costs.

Messrs. BUNN, LAKE & SMITH, for the plaintiff in error.

Messrs. NELSON & ROBY, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

It is contended in this case, by the counsel for Fitch, that Priest was bound by the contract to furnish money in advance for the purchase of such grain as Fitch might desire to buy. We understand the counsel for Priest to deny this, and to insist that he was bound to provide money only to pay for grain for which Fitch had already contracted. By the express terms of the contract Priest was "to supply and keep supplied the said Fitch with money," and it was provided the latter "shall in no case be required to advance any money himself." We think it clear Priest was to furnish the money in advance of either purchases or contracts, but we are also of opinion he was in no default until he had been specially notified that money was needed under the contract, or requested to send it, and had failed to do so. The contract can not be construed as requiring that Priest should constantly keep money in the hands of Fitch, but only that he should keep him supplied with whatever might be needed to purchase grain in pursuance of the object of the contract, and Priest could only know this as he might be notified by Fitch. Counsel have only argued the construction of the contract. They make no objection to the technical sufficiency of the declaration, either as to the averment of notice to Price, or in any other respect, and accepting the averment of notice as sufficient, we must hold the declaration to show a good ground of action, and the demurrer improperly sustained. The judgment is reversed and the cause remanded.

*Judgment reversed.*